# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN SCHENCK, | )<br>) |
| Plaintiff, | ) Civil Action No. 18-164<br>) Magistrate Judge Maureen P. Kelly |
| v. | )<br>) Re: ECF No. 80 |
| CURTISS-WRIGHT CORPORATION, | )<br>) |
| Defendant. | ) |

## **OPINION AND ORDER**

This is a proposed class action brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"). Plaintiff Justin Schenck ("Schenck") alleges that Defendant Curtiss-Wright Corporation ("Curtiss-Wright") violated the FCRA by failing to provide candidates for employment with copies of their background reports and a written summary of FCRA rights.

Presently before the Court is Representative Plaintiff's Motion for Class Certification. ECF No. 80. For the reasons set forth below, the motion will be denied.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

Schenck originally filed a Class Action Complaint against Curtiss-Wright in the Allegheny County Court of Common Pleas, Pennsylvania ("State Court"), on December 29, 2017. ECF No. 1-2. Curtiss-Wright removed the action to this Court on February 5, 2018. ECF No. 1. Schenck subsequently filed a First Amended Complaint, ECF No. 38, asserting seven claims against Curtiss-Wright.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF Nos. 13, 14.

In Counts One through Three of the First Amended Complaint, Schenck asserts claims pursuant to 15 U.S.C. §§ 1681b(b)(2) and 1681(d) of the FCRA. In Counts Four and Five, he asserts claims under 15 U.S.C. §§ 1681b(b)(3). In Counts Six and Seven, he asserts claims under the Pennsylvania Criminal History Records Information Act.

Based on the parties' Joint Stipulation to Sever and Remand Counts One to Three filed on December 6, 2018, ECF No. 74, the Court severed and remanded Counts One to Three to State Court on December 7, 2018, ECF No. 75. The Court retained jurisdiction over Counts Four through Seven. In the instant Motion for Class Certification, however, Schenck only seeks class certification of Counts Four and Five pursuant to Section 1681b(b)(3). See ECF No. 81 at 2 n. 1.

With respect to these two claims, Schenck proposes certification of the following class:

> All natural persons residing in the United States (including territories and other political subdivisions): (1) who applied for employment with [Curtiss-Wright] or any of its subsidiaries; (2) about whom [Curtiss-Wright] obtained a consumer report for employment purposes from Sterling InfoSystems, Inc. from September 2015 to May 2018; (3) where the consumer report contained a score of "Complete Report-Consider" at the top; and (4) [Curtiss-Wright] did not send a notice as provided in 15 U.S.C. § 1681b(b)(3).

ECF No. 80 ¶ 4.

The parties conducted discovery relevant to class certification. After discovery closed, on April 18, 2019, Schenck filed the instant Motion for Class Certification and Brief in Support. ECF No. 80, 81. Curtiss-Wright filed a Brief in Opposition on May 28, 2019, ECF No. 86, and Schenck filed a Reply Brief on June 11, 2019, ECF No. 89. A hearing for argument relative to the Motion for Class Certification was held on July 30, 2019. ECF Nos. 92, 93. Accordingly, the Motion for Class Certification is now ripe for disposition.

## B. Factual Background

### 1. Curtiss-Wright's standardized recruitment process

Curtiss-Wright is a global company that delivers highly engineered, critical function products and services to the commercial, defense, energy, and industrial markets. ECF No. 81-3. In order to provide a centralized, standardized process for recruitment, Curtiss-Wright created what is now referred to as the Talent Acquisition Team ("TAT"). ECF No. 86 at 2. The TAT, which is based out of Canada, oversees the recruitment process and makes hiring recommendations for Curtiss-Wright's various divisions and subsidiaries. Id.; ECF No. 81 at 12-13. Hiring decisions are retained at the local level. ECF No. 86 at 2.

Curtiss-Wright utilizes background screenings in connection with its post-offer/pre-employment process. Id. The background screenings are conducted by an outside vendor, Sterling Infosystems, Inc. ("Sterling"). Id. Sterling provides and maintains a software program for background checks, which Curtiss-Wright employees can log into to initiate background checks and review candidates' reports. Id.

After a candidate accepts a contingent offer of employment, the candidate is informed that he will receive a link from Sterling to complete his background report. Id. at 3. A TAT member then logs onto the Sterling portal and initiates the background check process. Id. At this point, the candidate is told how to obtain a copy of his report from Sterling. Id.; ECF No. 86-1 at 43:23-44:4. The candidate provides her employment history, education verification of highest level completed, address history and other items. ECF No. 86 at 3. Curtiss-Wright also informs the candidate that her offer is contingent upon completion of a successful background report. ECF No. 81 at 14.

When a report comes from Sterling, a TAT member reviews the report. ECF No. 86 at 3. If Sterling's report states "clear" at the top, indicating there is nothing requiring further review, the hiring manager and human resources are notified that the candidate has satisfied the background check requirements. Id.

Some reports from Sterling are returned with a "consider" notation.[2] Id. The "consider" notation, which is generated by Sterling, alerts the TAT that there is a discrepancy in the report. The "clear" versus "consider" notation is used by Sterling to notify Curtiss-Wright of information in the report that does not match what the candidate inputted into Sterling's system during the initiation process, which can include, for example, discrepancies in a graduation year or a candidate's dates of employment. Id. If the report is marked "consider," TAT's role is to review the report and address any areas requiring attention. Id. It may, at this time, require the candidate to provide supplemental information to the TAT to finalize the report. Id.

Although Curtiss-Wright often emailed its candidates portions of the report in order to resolve specific discrepancies, candidates were not provided with a complete copy of the background report unless the candidates requested it directly from Sterling. ECF No. 81 at 9-10.

Once a decision is made to rescind or potentially rescind an offer, TAT notifies the candidate orally. ECF No. 86 at 4. Thereafter, the TAT follows up with the candidate in writing to rescind the offer. Id. Of the 1,112 candidates in Schenck's proposed class whose background reports were returned by Sterling with a "consider" notation, only 7 were not hired by Curtiss-Wright. ECF No. 86 at 7. The remaining 1,105 candidates were hired. Id.

---

[2] The completed reports were also marked with a "complete" notation, so that the entire notation read either "complete and "clear" or "complete" and "consider." Because the parties focus on the distinction between the "clear" and "consider" portions of the notation, and for ease of reference, the Court omits the "complete" portion of the notation in its discussion.

4

### 2. Schenck's application process

Schenck applied for a machinist position at Curtiss-Wright. ECF No. 81 at 18. After his interview, Curtiss-Wright extended him an offer of employment, contingent upon the completion of "a satisfactory background investigation." Id. Thereafter, Schenck accessed Sterling's website to enter his prior employment and education information in order for Sterling to provide a background report to Curtiss-Wright. Id.

In January 2017, Sterling provided Curtiss-Wright with Schenck's completed background report. Id. Sterling marked Schenck's report with a "consider" notation under the County Criminal Record section. Id. This section reported a prior violation of 35 Pa. Stat. § 780-113(a)(3), which had occurred sixteen years prior to Schenck's application with Curtiss-Wright. Id. The report also flagged Schenck's prior employment verification status with a "consider" notation. Id. at 19.

After receiving the report, a Curtiss-Wright employee contacted Schenck to inform him that there was a problem with his background report, and that Curtiss-Wright was rescinding his offer of employment. Id. Curtiss-Wright did not provide Schenck with a copy of his background report. Id. Schenck requested and received a copy of his report from Sterling. Id.

## II. LEGAL STANDARD

### A. Standard of Review for Class Certification

In order to establish that class certification is appropriate, Schenck must satisfy all four requirements of Fed. R. Civ. P. 23(a) and one of the three categories under Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representatives' claims or defenses are typical of those of the class; and (4) the representatives will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a).

Because Schenck is proceeding under Rule 23(b)(3), he must also show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

"Class certification is proper only if the district court is satisfied, after a rigorous analysis, that the plaintiffs established each element of Rule 23 by a preponderance of the evidence." Reinig v. RBS Citizens, N.A., 912 F.3d 115, 125 (3d Cir. 2018) (citing Marcus v. BMW of N.A., LLC, 687 F.3d 583, 591(3d Cir. 2012) (internal quotations omitted). While the Court may not conduct a "free-ranging merits inquir[y]" in determining whether a class should be certified, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 568 U.S. 455, 466 (2013); see also Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011) (holding that courts must engage in a rigorous analysis of the Rule 23 requirements and "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim").

**B. FCRA**

In the Motion for Class Certification, Schenck only seeks certification as to Counts IV and V of the First Amended Complaint.[3] These claims seek relief under 15 U.S.C. § 1681b(b)(3)(A)(i)-(ii), for Curtiss-Wright's purported failure to provide Schenck and putative Class Members "a copy of the consumer report used to make an employment decision" and "the written FCRA Summary

---

[3] As noted above, the parties previously agreed to remand all claims other than Counts IV to VII of Schenck's First Amended Complaint. See ECF No.74 ¶ 9. Schenck is not seeking class certification of Counts VI and VII (seeking relief under the Pennsylvania Criminal History Record Information Act). See ECF No. 81 at 2, n. 1.

6

of Rights" in cases "where the consumer report was noted as containing information not in compliance with Curtiss-Wright's hiring standards." ECF No. 38 ¶¶ 111, 116.

Section 1681b(b)(3)(A) provides, in relevant part:

**(3) Conditions on use for adverse actions**

> **(A) In general** . . . in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>
> **(i)** a copy of the report; and
>
> **(ii)** a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

15. U.S.C. § 1681b(b)(3)(A).

"This section requires that an employer provide job applicants with their background report, summary of rights, and a real opportunity to contest the contents of the background report before the employer relies on the report to take adverse action against the applicant." Dahy v. FedEx Ground Package Sys., Inc., No. 17-1633, 2018 WL 6930261, at *3 (W.D. Pa. Dec. 20, 2018) (quoting Wright v. Lincoln Prop. Co., No. CV 15-3483, 2017 WL 386602, at *3 (E.D. Pa. Jan. 27, 2017)) (internal quotations omitted). This notice requirement, which is referred to as the pre-adverse action notice, is intended to provide applicants with sufficient time to discuss the reports with employers or to otherwise respond before the employer takes adverse action. See id.; see also Long v. S.E. Pa. Trans. Auth., 903 F.3d 312, 319 (3d Cir. 2018) ("The meaning of § 1681b(b)(3) is plain: before an employer takes adverse action based in any part on a consumer report, the consumer has a right to receive a description of his rights under the FCRA, as well as a copy of his report, regardless of its accuracy.").

7

"An 'adverse action' must be taken in order for a violation of the statute to occur." Manuel v. Wells Fargo Bank, Nat. Ass'n, 123 F. Supp. 3d 810, 820 (E.D. Va. 2015). In the employment context, an "adverse action" is defined as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii). The FCRA definition for adverse action also includes a catch-all clause: "an action taken or determination that is" "made in connection with an application that was made by, or a transaction that was initiated by, any consumer" and "adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(iv); see also Reardon v. Closetmaid Corp., No. 2:08-cv-1730, 2013 WL 6231606, at *12 (W.D. Pa. Dec. 2, 2013). "An adverse action occurs when the decision is carried out, when it is communicated or actually takes effect, and an actor has until that time to take the necessary steps to comply with the FCRA's requirements." Dahy, 2018 WL 6930261, at *3 (quoting Burghy v. Dayton Racquet Club, Inc., 695 F. Supp. 2d 689, 703 (S.D. Ohio 2010)) (internal quotations omitted); see also Moore v. Rite Aid Headquarters Corp., 33 F. Supp. 3d 569, 574 (E.D. Pa. 2014).

"Thus, courts interpreting this provision must address two distinct legal questions: (1) whether an employer's action in a given case constitutes an 'adverse action,' triggering the notice requirement; and (2) whether the notice was provided a sufficient time 'before' the adverse action was taken." Magallon v. Robert Half Int'l, 311 F.R.D. 625, 633 (D. Or. 2015).

## III. DISCUSSION

As discussed below, the Court finds that Schenck does not satisfy the numerosity requirement under Rule 23(a) or the superiority requirement under Rule 23(b). Because Schenck must satisfy all of the foregoing Rule 23 requirements in order to certify the class, the Motion to Certify Class must be denied.

8

## A. Rule 23(a) Factors

### 1. Numerosity

This factor requires that the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1); In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 309 (3d Cir. 1998). The United States Court of Appeals for the Third Circuit has held that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

In the instant Motion, Schenck argues that numerosity is satisfied, because his proposed class incudes approximately 1,112 members, each individual claim is small, and the members are geographically dispersed. This class, as defined by Schenck, includes all Curtiss-Wright applicants for whom a background check was conducted and marked by Sterling as "consider." Curtiss-Wright responds that Schenck's proposed class size is inaccurate, because it improperly includes non-aggrieved individuals. At best, it argues, the class is comprised of just 7 individuals who were not hired by Curtiss-Wright—an insufficient number to establish numerosity.

Following review, the Court agrees that Schenck's proposed class includes non-aggrieved individuals and concludes that Schenck has not satisfied the numerosity requirement. In support of the proposed class of 1,112 members who received a "consider" notation, Schenck argues that Sterling's "consider" notation represents an *intent* to take adverse action, thereby triggering the pre-adverse action notice provision of Section 1681b(b)(3)(A). Curtiss-Wright disputes that any such intent existed at this time, arguing that the "consider" flag merely suggests further action (e.g., resolving a discrepancy in dates of prior employment) was required for Curtiss-Wright to assess and finalize the report. Given that the "consider" notation was generated by Sterling, and

9

not by the individuals tasked with hiring decisions at Curtiss-Wright, that only a very small percentage (1%) of the applicants who received the "consider" notation were not hired, that the "consider" notation could arise with discrepancies as minor as a typographical error, and that the testimony suggests further review occurred following this notation, Schenck's position is not supported by the evidence presented.

But even assuming, *arguendo*, that intent to take adverse action existed at some point as to some or all of the 1,105 hired applicants, Schenck's proposed class still includes a significant number of non-aggrieved individuals. As noted above, Section 1681b(b)(3)(A) only requires the pre-adverse action notice to be provided "***before*** taking any adverse action," and thus, and "an 'adverse action' must be taken in order for a violation of the statute to occur." Manuel, 123 F. Supp. 3d at 820-821 (emphasis added); see also Reardon, 2013 WL 6231606, at *12 (concluding that applicants who did not experience any adverse action were not entitled to pre-adverse action notice, granting summary judgment as to those applicants). An "adverse action" does not occur until a decision is carried out, and "***an actor has until that time to take the necessary steps to comply*** with the FCRA's requirements." Dahy, 2018 WL 6930261, at *3 (emphasis added).

Here, Schenck does not identify any purported "adverse action" taken as to the 1,105 proposed class members that were hired by Curtiss-Wright. Schenck makes clear he is not arguing that the "consider" notation is, itself, is an "adverse action," but simply that it is the trigger for requiring notice and an opportunity to respond under Section 1681b(b)(3)(A). ECF No. 81 at 15.[4] Because notice is only required at some point "before" adverse action occurs, if an adverse action

---

[4] Courts have held that the formation of intent to take adverse action is distinguished from the adverse action itself. Dahy, 2018 WL 6930261, at *3 ("The formation of such intent, therefore, cannot be the adverse action") (internal quotations omitted); Branch v. Gov. Employees Ins. Co., 286 F. Supp. 3d 771, 783 (E.D. Va. 2017) ("This Court and others have consistently recognized that an employer's formation of intent to take adverse action and the adverse action itself are distinct.").

10

never happened, then at best, the time for providing notice has not yet lapsed, and no violation of the statute has occurred as to the 1,105 hired applicants. Thus, Schenck only identifies a potential statutory violation as to the 7 rejected applicants.

To the extent Schenck relies on the decision of the United States Court of Appeals for the Third Circuit in Long v. Southeastern Pennsylvania Transportation Authority, 903 F.3d 312 (3d Cir. 2018), this ruling does not alter the outcome in the instant case. In Long, the plaintiffs were not hired because of criminal history disclosed in their background reports, and the defendant employer failed to provide copies of those reports under Section 1681b(b)(3)(A). Long, 903 F.3d at 316-17. There was, therefore, no dispute that "adverse action" occurred in that case, or that defendant had violated the FCRA. The Third Circuit addressed, instead, whether plaintiffs had standing to sue despite the fact that there was no inaccurate information in the reports that plaintiffs could have disputed, if given the opportunity. Id. at 318. Regardless of whether the reports were inaccurate, the court concluded, plaintiffs had standing to sue for a violation of the FCRA. In so holding, the Third Circuit noted: "***taking adverse action*** without providing the required consumer report is the very harm that Congress sought to prevent" through enacting the FCRA. Id. at 324 (quoting Susinno v. Work Out World Inc., 862 F.3d 346, 352 (3d Cir. 2017) (internal quotations omitted) (emphasis added).

In this proposed class action, however, Schenck does not assert any violation of the statute with respect to the individuals hired by Curtiss-Wright, for the reasons discussed above. Whether, as Long considers, standing exists for a purported "bare procedural violation" of the FCRA is therefore not relevant to this analysis. See id. at 317.

In a footnote, in his Memorandum in Support of Motion for Class Certification, Schenck further argues that Congress did not intend for adverse action to be a precondition to recovery

11

because it envisioned that two separate notices (both a pre-adverse action notice and an adverse action notice) be provided, as necessary. ECF No. 81 at 23, n. 7. While the statute contemplates the potential for more than one communication, Schenck fails to produce authority to support the proposition that a statutory violation occurs if, in fact, no adverse action is taken.

For these reasons, the Court agrees with Curtiss-Wright that the proper class size consists of the approximately 7 individuals not hired by Curtiss-Wright, as opposed to the 1,112 members proposed by Schenck who received a "consider" notation but were hired.[5] With respect to a class of 7, it is clear that Schenck cannot satisfy numerosity. Indeed, at the hearing of this matter, Schenck's counsel acknowledged that there is no authority in the Third Circuit for certifying a class of less than 10 members, admitting that the "tipping point" is typically around 20. ECF No. 93 at 25:11-20; see also Stewart, 275 F.3d at 226-227. Accordingly, Schenck fails to meet his burden of persuasion as to the first requirement for class certification pursuant to Rule 23(a)(1). As such, the Court finds that Schenck has not established numerosity.

### 2. Commonality

Rule 23(a)(2) requires Schenck to show that there are questions of law or fact common to the class. While Schenck must establish the existence of at least one issue of law or fact common to the class, he is not required to show that "there is an identity of claims or facts among class members." In re Prudential, 148 F.3d at 310; Johnston v. HBO Film Mgmt., 265 F.3d 178, 184 (3d Cir. 2001).

---

[5] At the hearing of this matter, Schenck's counsel argued that it is feasible that, after hiring, Curtiss-Wright could initiate adverse action based on information contained in the background report in the employee's file, and that counsel is aware of one individual who was later discharged as a result of misstatements in his or her application. ECF No. 93 at 38:14-39:5. While it is conceivable that certain hired applicants could assert a violation of the FCRA based on subsequent adverse action, this has not been briefed for the Court's consideration.

12

The Court finds that this second requisite is satisfied. As Schenck correctly points out, the proposed class members' claims all arise out of a standardized policy for handling consumer reports during the employment process at Curtiss-Wright, creating at least one issue of law or fact common to the class. To the extent Curtiss-Wright argues that commonality does not exist because there is no "intent" to take adverse action as to the hired applicants, this issue is moot in light of the Court's finding that the 1,105 hired individuals are not properly included in the class. Thus, there are common questions of law and fact sufficient to establish commonality.

### 3. Typicality

Typicality requires that "the claims or defense of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). This inquiry focuses on whether the interests of the named plaintiffs align with the interests of the absent class members. Stewart, 275 F.3d at 227. It is designed to ensure that "class representatives are sufficiently *similar* to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the class. In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir. 2009).

The Court also finds that this third requirement is met. Schenck's claims are highly similar to the 6 other rejected applicants, in that they all allegedly went through Curtiss-Wright's standardized hiring process, did not receive a pre-adverse action notice as required by Section 1681b(b)(3)(A), and were ultimately not hired by Curtiss-Wright based in whole or in part on their background reports. To the extent Curtiss-Wright argues that Schenck's claims are not typical because he admits his background report was accurate, the Court notes that there is no evidence provided to establish whether this is, in fact, atypical of the remaining class members. In any event, however, Long holds that "the statute confers a broader right than simply to be free from

adverse action based on inaccurate information." Long, 903 F.3d at 319. Therefore, typicality is satisfied.

### 4. Adequacy of Representation

Pursuant to Rule 23(a)(4), Schenck must establish that he "will fairly and adequately protect the interests of the class." This inquiry requires the Court to consider (1) the qualifications of the proposed class attorney to represent the class; and (2) whether the named parties' interests conflict with those of the class. Schering Plough, 589 F.3d at 597-98.

There is no dispute here that Schenck's counsel is sufficiently qualified to represent the class, and the Court concludes this element is met. The parties dispute only whether Schenck is an adequate representative for the proposed class. Schenck argues that he has a lay person's knowledge of this case and has demonstrated a genuine interest in the case by giving a deposition, attending the mediation and attending the oral argument of the instant motion. While Schenck's adequacy as a representative is moot in light of Schenck's failure to satisfy the numerosity requirement under Rule 23(a)(1), the Court finds that Schenck has demonstrated sufficient knowledge and alignment of interest with respect to the 7 potential class members, such that this requirement would be satisfied.

## B. Rule 23(b) Factors

In addition to the Rule 23(a) factors, Schenck must establish that at least one of the factors under Rule 23(b) is satisfied. Schenck argues that the proposed class satisfies Rule 23(b)(3), which requires that (1) questions of law or fact predominate over individual issues; and (2) that the class action mechanism will be superior to other available means of adjudicating the controversy. Of these two requirements, the Court concludes that Schenck does not satisfy the superiority requirement, rendering class certification improper.

### 1. Predominance

This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Walney v. SWEPI LP, No. 13-102, 2015 WL 5333541, at *9 (W.D. Pa. Sept. 14, 2015) (internal quotations omitted). The court "must examine each element of a legal claim through the prism of Rule 23(b)," and "because the nature of the evidence that will suffice to resolve a question determines whether the issue is common or individual, a district court must formulate some prediction as to how specific issues will play in order to determine whether common or individual issues predominate in a given case." Id. (internal quotations omitted).

Here, with respect to the class of 7 rejected applicants, the use of a standardized application and review process at Curtiss-Wright suggests that many of the relevant issues will be subject to common proof. Whether, for example, Curtiss-Wright ever issued background reports and summaries of FCRA rights as a matter of policy, can be proved with respect to all class members. Although Curtiss-Wright argues that there are several highly individualized inquiries present, ECF No. 86 at 10, including a fact-specific inquiry into whether "intent" existed as to any particular candidate, these issues are largely mooted by the Court's conclusion that the class does not properly include the hired individuals. Thus, the predominance requirement as to the 7 rejected applicants is met.

### 2. Superiority

"The superiority requirement of Rule 23(b)(3) asks whether 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" Barenbaum v. Hayt, Hayt & Landau, LLC, No. 18-4120, 2019 WL 4305761, at *15 (E.D. Pa. Sept. 10, 2019) (quoting Fed. R. Civ. P. 23(b)(3)). "Courts are able to 'balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication.'" Id. (quoting In

re Prudential, 148 F.3d at 307-08)). Rule 23(b)(3) lists four factors to consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) any similar pending litigation; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. "Superiority must be looked at from multiple points of view: the judicial system, the potential class members, the present plaintiff, the attorneys for the litigants, the public at large, the defendant, and the issues." Chakejian v. Equifax Info. Serv. LLC, 256 F.R.D. 492, 501 (E.D. Pa. 2009).

In support of his Motion for Class Certification, Schenck argues that there is no desire for individual members to litigate these claims in individual cases, given the limited potential recovery. He further argues that there is no competing class litigation against Curtiss-Wright on the claims presented, that this is a desirable forum because Curtiss-Wright does business in this forum, and there is a related class action pending in the Allegheny County, Pennsylvania Court of Common Pleas. Finally, he notes that this case does not present significant manageability problems. ECF No. 81 at 31-32.

In opposing the instant Motion, Curtiss-Wright asserts that Schenck cannot satisfy the superiority requirements set forth in Rule 23(b)(3). ECF No. 86 at 10.

Based on consideration of the above-noted factors, the Court agrees that some of the relevant considerations may weigh in Schenck's favor. However, the Court finds that the class action is not a superior mechanism for the same reasons as set forth in its discussion of Rule 23(a)(1). Given the very limited number of claims and small number of class members, a class action mechanism is not necessary or appropriate to manage the remaining volume of claims of the 7 applicants. Accordingly, the superiority requirement is not satisfied.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Schenck has not met his burden of establishing each of the requisite Rule 23 elements by a preponderance of the evidence. Therefore, class certification is not proper. Plaintiff's Motion for Class Certification is denied.

### ORDER

Accordingly, this /4th day of November, 2019, IT IS HEREBY ORDERED that Representative Plaintiff's Motion for Class Certification, ECF No. 80, is DENIED.

BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF